UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY LEE SCOTT,

    Petitioner,

v.

DUNCAN MACLAREN,[1]

    Respondent.

Case No. 15-11294
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

Jimmy Lee Scott filed a habeas corpus petition challenging his state court convictions for assault with intent to commit murder, unlawful imprisonment, and possession of a firearm during the commission of a felony. *See* 28 U.S.C. § 2254. His petition raises three claims for relief. None persuade. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

**I.**

On the night of August 20, 2010, Kendra Bryant, Scott's girlfriend, visited Scott at his home. (R. 4, PageID.147.) The two got into an argument and Scott slapped and choked her. (R. 4, PageID.148.) Scott then retrieved a gun and shot Bryant five times. (*Id.*) He did not allow her to leave the house, but Bryant eventually escaped and survived her injuries. (*See* R. 4, PageID.147–148.)

---

[1] Scott has been transferred to the Kinross Correctional Facility. So the warden of this facility is the proper respondent. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Duncan MacLaren in the caption.

In late 2010, the state court ordered that Scott be evaluated for criminal responsibility and competency. (R. 1-7, PageID.94–99.) Dr. Koltuniak, the evaluating psychologist, could not perform the evaluation for criminal responsibility "[d]ue to Mr. Scott's lack of cooperation." (R. 1-7, PageID.94.) As for Scott's competency to stand trial, Dr. Koltuniak opined that Scott was intentionally attempting to appear emotionally impaired and confused. (R. 1-7, PageID.96.) A malingering test was administered, and the results indicated that Scott was deliberately answering questions regarding his memory incorrectly. (R. 1-7, PageID.97.) The report also indicated that Scott was either fabricating or exaggerating past auditory and visual hallucinations. (R. 1-7, PageID.96.) Thus, while Dr. Koltuniak could not complete a conventional examination of Scott's competency, he did opine that the presumption of competency, "could be safely made in the current case." (R. 1-7, PageID.99.)

At the pretrial hearing, Scott's attorney, Cena White, informed the state trial court that Scott would plead no contest to the charges. (R. 5-3, PageID.274.) White indicated that there had been a *Cobbs*[2] sentencing evaluation done and Scott wanted to avail himself of it. (*Id.*) The evaluation called for a minimum sentence not to exceed ten years plus two years consecutive for the felony firearm. (*Id.*)

Scott pled no contest. (R. 5-3, PageID.275–277.)

At the sentencing hearing, White requested that the court sentence Scott in accordance with the *Cobbs* evaluation. (R. 5-4, PageID.282.) The court heard from Bryant, who indicated that she

---

[2] *See People v. Cobbs*, 505 N.W.2d 208, 212 (Mich. 1993) (creating procedure whereby a sentencing evaluation is made in conjunction with a plea agreement which allows the defendant to withdraw the plea in the event the trial court will not sentence the defendant in accordance with the evaluation).

thought Scott should be given the maximum possible sentence. (R. 5-4, PageID.282–283.) The court, having believed that Bryant was in agreement with the deal, called for a sidebar conference and recess. (*Id.*)

After the sidebar and recess, the court indicated that it would not accept the sentencing evaluation and asked the parties how they wanted to proceed. (R. 5-4, PageID.283.) White indicated that the guideline range was for a minimum term of between 135 to 225 months, and it was her understanding after the sidebar that the court would sentence Scott to the minimum 135 month term if they went ahead with the plea. (R. 5-4, PageID.284.) She further stated that "Mr. Scott has indicated that he wishes to proceed with the 135 months, that being the minimum." (*Id.*) The court indicated that this was correct, and that it would sentence Scott to a minimum term of 135 months, plus two years for the firearm offense. (*Id.*) The prosecutor voiced strenuous opposition and requested an upward departure from the guideline range. (R. 5-4, PageID.284–285.)

After another recess, the court stated that it would "reluctantly" sentence Scott to the second negotiated agreement. (R. 5-4, PageID.286.) The court explained, "It is in fact a heinous, reprehensible crime, but the Court would note for the record that the defendant has taken responsibility for his actions, has spared the victim the trauma of trial and reliving this very traumatic and tragic event, and based on those facts the Court is going to follow the *Cobbs* agreement." (*Id.*)

Scott subsequently filed a motion for resentencing and to withdraw the plea. Scott maintained that the court should have given him an opportunity to withdraw his plea once it decided not to comply with the first *Cobbs* agreement. He further sought a *Ginther* hearing on his

trial counsel's failure to investigate his mental health and pursue any defenses based on his mental health.

The court denied both the motion to withdraw the plea and the request for a *Ginther* hearing. (R. 5-5, PageID.294–295.) But the court accepted Scott's challenge to the scoring of the sentencing guidelines, and ordered resentencing. (R. 5-5, PageID.295–296.)

Scott filed a motion for reconsideration, which the trial court denied. (R. 1-3.)

Scott was resentenced on June 26, 2012. (R. 5-6.) After addressing the new guideline range, Scott was once again sentenced to 11 years and 3 months to 50 years on the assault with intent to murder charge, 10 to 15 years on the unlawful imprisonment charge, and a consecutive two years on the firearm charge. (R. 5-6, PageID.304.)

Scott filed an application for leave to appeal in the Michigan Court of Appeals. He raised four claims, including that the trial court erred in denying him a *Ginther* hearing and that the trial court violated *People v. Cobbs* by failing to inform him that he could withdraw his no-contest plea after the court decided to not follow the first *Cobbs* agreement.

The Michigan Court of Appeals denied Scott's application for leave to appeal "for lack of merit in the grounds presented." *People v. Scott*, No. 314075 (Mich. Ct. App. Feb. 15, 2013).

Scott then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as he raised in the court of appeals. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Scott*, 839 N.W.2d 211 (Mich. 2013).

Scott now asks this federal court for a writ of habeas corpus. He raises three grounds in his petition. He argues that his trial counsel was constitutionally ineffective for failing to investigate his mental health and competency prior to pleading and for failing to present defenses based on

4

his mental health. He also argues that his plea was not knowing and voluntary as the trial court failed to inform him that he could withdraw his plea after rejecting the first *Cobbs* agreement.

For the following reasons, Scott's petition will be denied.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

### A.

Scott first asserts that his trial counsel was ineffective for failing to investigate his mental health and present an insanity defense.

The first task for the Court is to determine whether the state court adjudicated this claim on the merits. Scott argues that the trial court never addressed his failure-to-investigate claim and therefore the Court must review the claim *de novo*. (R. 1, PageID.40.) The Court disagrees.

5

Although it is unclear at best whether the trial court adjudicated this claim, that does not mean that the Court reviews the claim *de novo*. While the Michigan Supreme Court order was not an adjudication on the merits, *Hynes v. Birkett*, 526 F. App'x 515, 519 (6th Cir. 2013), the Michigan Court of Appeals' decision was, *Werth v. Bell*, 692 F.3d 486, 491–94 (6th Cir. 2012). Scott presented his federal failure-to-investigate claim to the Michigan Court of Appeals. (R. 5-7, PageID.326–329.) And "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Scott has not provided any basis to doubt that the Court of Appeals adjudicated that claim on the merits. So Scott must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. He has not done so.

Success on an ineffective-assistance-of-counsel claim requires Scott to point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice element requires Scott to show that there is a "reasonable probability," *id.* at 694, that, but for White's errors, he would have gone to trial instead of pleading to the charges. *Post v. Bradshaw*, 621 F.3d 406, 430–31 (6th Cir. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

Here, there is a reasonable basis for the state court to have found that White did not fail to reasonably investigate Scott's mental health. None of the records that Scott produced demonstrate that his counsel was unreasonable in not further investigating his mental health for a possible insanity defense. Dr. Koltuniak wrote to the court that he was unable to perform an evaluation of Scott's criminal responsibility "[d]ue to Mr. Scott's lack of cooperation." (R. 1-7, PageID.94.) He further opined during Scott's competency evaluation that Scott was intentionally attempting to appear emotionally impaired and confused, was deliberately answering questions regarding his memory incorrectly, and was fabricating or exaggerating past auditory and visual hallucinations. (R. 1-7, PageID.96–97.) To be sure, the records from Harbor Oaks Hospital, where he was admitted for psychiatric treatment after being released from the Macomb County Jail (R. 1-8, PageID.117), and the report from his evaluation at the Michigan Department of Corrections (R. 1-9, PageID.124), do suggest that he is mentally ill, with evidence of psychosis and schizophrenia.[3] But faced with Dr. Koltuniak's findings of malingering and Scott's refusal to participate in the evaluation into this criminal responsibility, the Court cannot find that there was no reasonable

---

[3] At some point in time, after being evaluated by MDOC, Scott was released on bond. (R. 5-3, PageID.279.) He voluntarily checked himself into Harbor Oaks because he believed he was suicidal. (R. 1-8, PageID.112.)

7

basis for the state court to find that White reasonably decided not to investigate Scott's legal culpability further.

Scott also claims that White further erred in not pursuing an insanity defense.

The trial court rejected this claim on the merits when it denied Scott's motion to withdraw his plea and the motion for reconsideration.[4] Because the Michigan Court of Appeals did not provide a reasoned decision, the Court will "look through" that decision to the reasoned decision of the trial court. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193–94 (2018).

The trial court found that White did not perform deficiently in not pursuing an insanity defense. The court highlighted that Scott had been evaluated and found competent. (R. 5-5, PageID.295.) As for the medical records that Scott asserted White improperly dismissed, the state trial court found that those records had a "minimal, if not irrelevant" "contribution to either any defense strategy or sentencing"; it added that it "[couldn't] imagine any defense that would, that those records could support under those facts." (*Id.*)

The Court cannot find that this decision involved an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d). Scott relies on the report generated by Dr. Feurino from the Michigan Department of Corrections to show that he had a viable insanity defense. (R. 1-9, PageID.122–125.) However, Dr. Feurino did not opine that Scott was legally insane when he attacked the victim. Rather, Dr. Feurino opined that Scott suffers from severe mental illness. (See id.) But in order to prevail on a defense of legal insanity, a defendant must prove that he "lacks substantial capacity either to appreciate the nature

---

[4] Although the court cites no federal law, in situations where, as here, state and federal law line up, *see People v. Pickens*, 521 N.W.2d 797 (Mich. 1997), a state court's discussion of state law is "sufficient to cover a claim based on the related federal right," even if federal law is never mentioned, *see Johnson v. Williams*, 568 U.S. 289, 298–99 (2013).

and quality of the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." Mich. Comp. Laws § 768.21a(1). Dr. Feurino's report does not opine on this issue. Also, the record demonstrates that trial counsel chose to pursue a strategy of contrition and mitigation in order to minimize Scott's sentence. And the state court noted Scott's acceptance of responsibility and contrition as factors that led it to reluctantly accept the sentencing recommendation. On the doubly deferential standard of review, *see Harrington*, 562 U.S. at 101, it was not unreasonable for the state court to find White's decisions reasonable.

Moreover, even if Scott established that counsel was deficient for not further exploring an insanity defense, he presented no evidence of prejudice.[5] Again, without evidence suggesting that he met the legal definition of insanity at the time of the crime, Scott cannot show that he would have not pled and instead opted for trial. *See Hill*, 474 U.S. at 59.

Lastly, Scott appears to be contesting White's alleged failure to present mitigating evidence at his sentencing hearing. (R. 1, PageID.37–38.) This claim was raised and adjudicated by the state courts. (R. 5-5, PageID.294–295; R. 5-7, PageID.329–331; R. 5-8, PageID.503–504.) Although the Warden did not address this claim in its answer, the Court finds it meritless.

"Counsel's . . . failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (citations omitted). But "an omission by counsel at sentencing will not be deficient unless his failure to raise the argument was objectively unreasonable." *Id*. "An error by counsel at

---

[5] In passing, Scott also raises that White failed to investigate the possibility of Scott pleading "guilty but mentally ill," pursuant to Michigan Court Rule 6.303, or that a jury could have made this finding at trial, Mich. Comp. Laws § 768.36. (R. 1, PageID.36.) As someone found "guilty but mentally ill" "must be sentenced in the same manner as any other defendant committing the same offense and subject to psychiatric evaluation and treatment," *People v. Carpenter*, 627 N.W. 2d 276, 283 (Mich. 2001), counsel's failure to pursue this strategy did not prejudice Scott. *See People v. Lloyd*, 590 N.W.2d 738, 745 (Mich. 1999).

9

sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment." *Id*. at 563 (citing *Glover v. United States*, 531 U.S. 198, 202–04 (2001)).

The Court again looks to the trial court opinion. The trial court found that the medical records had "minimal" value to sentencing, or were wholly "irrelevant." (R. 5-5, PageID.295.) It further found that White "performed at a very high level in negotiating the original *Cobb's* that she did where the Court agreed to depart two years below the bottom of the guidelines, and continue to procure what the court believes to be [an] excellent deal for this defendant under the circumstances in convincing the Court to sentence at the bottom of the guidelines." (*Id*.)

The Court cannot find that the trial court's decision was an unreasonable application of Supreme Court precedent. Indeed, the Court doubts that White failed to present evidence regarding Scott's mental health for the trial court's consideration. In the prosecution's response to the state appellate briefing, it asserted that White wrote a memorandum asking the court to sentence Scott according to the first *Cobbs* agreement, and that memo "extensively states and informs the Court of [Scott's] mental health history in support of a departure below the guidelines." (R. 5-8, PageID.609.) Scott offers nothing contradicting the prosecution's assertion about what the trial court knew.

Further, Scott cannot show prejudice. First, the trial court itself found that the documents Scott wanted presented were of "minimal" value, if not totally "irrelevant," so Scott cannot show that this omission was an "error" that amounted to any extra jail time. Further, Scott's appellate counsel was able to fully present Scott's mental health history to the court at his re-sentencing hearing. (R. 5-6, PageID.300–03.) Despite having this information, the court did not change its sentence. (R. 5-6, PageID.304.)

Scott's first claim fails.

**B.**

Scott's second claim asserts that his counsel was ineffective for failing to challenge his competence to plead no contest. This claim appears to challenge both White's failure to investigate his competency to plead and her failure to challenge his competency to plead. (R. 1, PageID.41.)

The State argues that this claim is unexhausted, as Scott failed to raise these issues in his appeal to the Michigan Court of Appeals and Michigan Supreme Court. (R. 4, PageID.168–169.) Scott disagrees. (R. 1, PageID.42.)

Unfortunately, while Scott's appeal brief to the Michigan Court of Appeals discusses his counsel's failure to investigate his mental health issues, it does not clearly delineate the claims being raised. So it is unclear whether this claim was exhausted. (*See* R. 5-7, PageID.307–348.)

Because of the uncertainty, the Court will assume that the claim was not exhausted. And while Scott has not yet filed a motion for relief from judgment under Michigan Court Rules § 6.502, if he were to do so, his claim would likely be procedurally defaulted by the state court because it could have been raised on direct appeal. *See* Mich. Ct. R. 6.508(D)(3). Even with these procedural deficiencies, the Court will decide this claim on the merits as it is clearly deficient. *See* 28 U.S.C. § 2254(b)(2); *Hickey v. Hoffner*, 701 F. App'x 422, 426 (6th Cir. 2017); *Farley v. Lafler*, 193 F. App'x 543, 549 (6th Cir. 2006).

Starting first with the investigation, as referenced before, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91. Here, White had the following information about Scott's mental health: a recent evaluation by Harbor Oaks Hospital indicating that that Scott was mentally ill, likely with major depression with psychotic features (R. 1-8); a report from the court-ordered psychologist stating that he was unable to complete a "conventional examination of Mr.

Scott's competency" due to his malingering but that the presumption of competence "could be safely made" (R.1-7); and a report from MDOC that Scott either had schizophrenia or major depression with psychotic features (R. 1-9).

The standard for competency "is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396, (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). This standard is the same for pleading and standing trial. *Godinez*, 509 U.S. at 397.

Given this standard, the Court cannot find that White did not make a reasonable decision not to further investigate Scott's competency given what she knew. Indeed, while there was evidence that Scott was suffering from a mental illness, the psychologist who was tasked specifically with determining Scott's competency to stand trial opined that the presumption of competence could be "safely made," and additionally found evidence that Scott was malingering to feign incompetence. (*See* R. 1-7.) Further, information in the medical records indicate that Scott understood the proceedings against him: he told staff at Harbor Oaks that he had been recently released from jail and was facing charges of assault with attempt to murder (R. 1-8, PageID.112); and he expressed remorse about the offense to Dr. Feurino at MDOC (R. 1-9, PageID.123). Further still, Scott states that he provided his records from Harbor Oaks Hospital in hopes that White would mount an insanity defense on his behalf—an act that strongly suggests he "had a present ability to consult with his lawyer with a reasonable degree of rational understanding" of the proceedings against him. Given that, the Court cannot find that White unreasonably decided that she did not need to investigate this issue further. For the same reasons, the Court cannot find that White performed deficiency for failing to object to his competency prior to the plea.

Nor can Scott show prejudice. Mental illness does not equate to mental incompetence. In evaluating Scott's *Cobb's* argument, the trial court specifically found that Scott "seemed to clearly understand the nature and extent of the proceeding" (including that he was waiving certain rights and the maximum penalties). (R. 5-5, PageID.294.) And on the motion for reconsideration, the trial court further "found no evidence that [Scott] was incapable of understanding the proceedings, of comprehending his own condition in reference to his proceedings, or of assisting in his defense in a rational and reasonable manner." (R. 5-7, PageID.363.) The trial court continued, "[Scott's] mental capacity was not questioned, particularly since he calmly and rationally addressed and apologized to the victim, and otherwise conducted himself cogently and sensibly, giving this Court no reason to order another forensic examination, or even question his competence." (*Id.*)

Thus, even if White *had* raised the issue of his competency to the trial court, there is not a reasonable probability that the trial court would have found Scott incompetent to plead.

Scott's second claim fails.

## C.

Scott's final claim asserts that the trial court failed to inform Scott of his ability to withdraw his plea after the minimum sentence evaluation was increased at the sentencing hearing. Because he was not informed of his right to withdraw his plea, Scott argues that his plea was not knowing and voluntary.

Like Scott's first claim, the Court will look at the trial court's reasoning in denying the *Cobbs* claim. *See Wilson*, 138 S.Ct. at 1193–94.

When this claim was raised in Scott's motion to withdraw his plea, the trial court rejected it as follows:

> The Court believes that it was very clear to the Defendant that he could withdraw his plea. In effect he did, although it was not part of the record. The Court believes

13

> that it certainly complied with the spirit of People v Cobb, if not the explicit letter. Hindsight being 20/20, it would have, it would have been desirable to articulate on the record that the Defendant did have the opportunity to withdraw his plea. But the court did do that at side bar. Counsel was clearly aware of that. The Defendant was clearly aware of that, and the Defendant clearly exercised his option to negotiate a second Cobb's agreement with full knowledge that he had the ability to withdraw his plea, if he did not.

(R. 5-5, PageID.293–94.)

A plea is knowing and voluntary only if a defendant has "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The purpose of the knowing-and-voluntary inquiry is to determine whether the defendant "actually does understand the significance of a particular decision." *King v. Berghuis*, 744 F.3d 961, 970 (6th Cir. 2014) (quoting *Godinez*, 509 U.S. at 401 n. 12). "The case law indicates that the inquiry as to whether a guilty plea is knowing and voluntary is a 'subjective, highly individualized test.'" *King*, 744 F.3d at 970.

Here, the only reason Scott says his plea was not knowing and voluntary is that the trial court failed to instruct him that he had the right to withdraw his plea. But the state trial court found that Scott knew that he had the right to withdraw his plea and that Scott's counsel was also informed of that right at sidebar. And Scott does not argue that this "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). Indeed, his arguments focus on the trial court's failure to strictly comply with *Cobbs* rather than Scott's subjective knowledge of his right to withdraw his plea. (R. 1, PageID.43–50.) As the "knowing and voluntary" inquiry is a subjective, individualized inquiry as to what Scott actually knew and understood, and the trial court made an unrebutted finding that Scott subjectively knew he had the right to withdraw his plea, this Court cannot find that his plea was not knowing and voluntary.

Lastly, Scott argues that the trial court failed to raise the issue of Scott's mental competence to plead, rendering his plea not knowing and voluntary. (R. 1, PageID.48–49.) Like his competency claim in the preceding section, it is unclear at best whether this claim was raised in the state courts. (*See* R. 5-7, PageID.307–348.) But, again, because it lacks merit, the Court will address the claim. *See* 28 U.S.C. § 2254(b)(2); *Hickey*, 701 F. App'x at 426; *Farley*, 193 F. App'x at 549.

What, precisely, Scott is alleging in this claim is unclear. But looking at the statutes and case law cited in the brief, the Court gleans that Scott is challenging the trial court's failure to raise the issue of Scott's competency to plead. (*See* R. 1, PageID.48–29.)

A trial court must hold a competency hearing prior to entry of a plea where evidence raises a "bona fide doubt as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (quoting *Drope v. Missouri*, 420 U.S. 162, 173 (1975)). Here, Scott argues that the medical records indicating that he is mentally ill should have raised a bona fide doubt. (R. 1, PageID.49.) But, as discussed earlier, mental illness does not equate to incompetence to plead, and Scott fails to connect any findings in those records with an inability to consult with his attorney or understand the proceedings against him. Further, a doctor specifically tasked with determining Scott's competency opined that Scott was malingering and that it was safe to presume his competence. (R. 1-7, PageID.99.) And Scott points to no evidence of his behavior in court that would have given the trial court a bona fide doubt of his ability to consult with his attorney or his understanding of the proceedings against him. This claim fails.

As none of Scott's claims merit relief, the petition will be denied.

## IV.

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. And a certificate of appealability is DENIED because Scott has not shown that reasonable jurists would

debate whether the petition should have been resolved in a different manner. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 24, 2018.

s/Julie Owens                
Case Manager
